IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| MINDY CASTLEMAN,<br><br>Plaintiff,<br><br>v.<br><br>FCA US LLC f/k/a CHRYSLER GROUP, LLC,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS**<br><br>Case No. 2:18-cv-00342-JNP-PMW<br><br>District Judge Jill N. Parrish |

Before the court is the Motion to Dismiss Plaintiff Mindy Castleman's First Amended Complaint and Jury Demand ("Amended Complaint") filed by Defendant FCA US LLC ("FCA"). ECF No. 40. For the reasons articulated below, the court denies the motion.

## BACKGROUND

On May 1, 2016, Plaintiff Mindy Castleman ("Castleman") was driving eastbound on Interstate 70, near mile post 183, when the 2004 Jeep Grand Cherokee Laredo (the "Vehicle") she was driving overturned resulting in severe injury.[1] Castleman alleges that her injuries were caused by certain design flaws and defects common to the 1999-2004 Jeep model Grand Cherokees. Castleman filed this lawsuit against Fiat Chrysler Automobiles U.S., LLC (FCA US LLC) ("FCA") seeking recovery for strict product liability, negligent product liability, breach of warranties, and for punitive damages.

The Vehicle at issue was designed and manufactured by Chrysler, LLC, DaimlerChrysler Corporation, Old Carco LLC and its affiliates (collectively "Old Chrysler"). Plaintiff alleges that at the time of design and manufacture, the Vehicle was "defective in its design, manufacture,

---

[1] "Ms. Castleman was diagnosed critically with (1) paralysis; (2) cervical spine instability; (3) multiple rib fractures; (4) left scapular fracture; (5) an orbital floor fracture; (6) lacerations on her left kidney, scalp and elbow; and (7) multiple abrasions." *See* Am. Compl. at ¶ 21.

1

testing, maintenance, advertising, selling, distribution, and introduction into the stream of commerce." *See* Am. Compl. at ¶ 8. These defects allegedly include, but are not limited to:

> being supplied without important crashworthiness and protection systems . . . , inadequate roof strength, roof structures, inadequate roof materials, inadequate roof-crush resistance, inadequate restraint protection systems, lack of electronic stability control, and inadequate center of gravity and overall vehicle design rendering it dangerously prone to roll over during foreseeable driver maneuvers.

*Id*. Castleman alleges that Old Chrysler knew of these defects, but intended that the Vehicle be purchased and operated regardless of the defects.

In April 2009, Old Chrysler filed for bankruptcy protection in the United States Bankruptcy Court, Southern District of New York. On June 1, 2009, the Bankruptcy Court entered an order authorizing the sale of Old Chrysler's assets to FCA ("Sale Order")[2] pursuant to the Master Transaction Agreement ("MTA"). The sale closed on June 10, 2009 ("Closing" or the "Sale"). Through the Sale Order, FCA purported to proscribe liability for any product liability or successor liability claims not explicitly assumed in the MTA:

> Except for the Assumed Liabilities expressly set forth in the Purchase Agreement . . . [t]he Purchaser shall not be deemed, as a result of any action taken in connection with the Purchase Agreement or any of the transactions or documents ancillary thereto or contemplated thereby or the acquisition of the Purchased Assets, to: (a) be a **legal successor**, or otherwise **be deemed a successor** to the Debtors (other than with respect to any obligations arising under the Assumed Agreements from and after the Closing); . . . [and] the Purchaser shall not have any **successor, derivative or vicarious liabilities** of any kind or character for any Claims, including, but not limited to, on any theory of **successor or transferee liability**, *de facto* merger or continuity, environmental, labor and employment, products or antitrust liability, whether known or unknown as of the

---

[2] *In re Old Chrysler LLC, et al.*, Case No. 09-50002, Order (I) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Interests and Encumbrances, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith and Related Procedures and (III) Granting Related Relief, ("Sale Order") (Bankr. S.D.N.Y. June 1, 2009).

2

> Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated.

Sale Order ¶ 35 (emphasis added).

On November 19, 2009, the Bankruptcy Court entered a Stipulation and Agreed Order Approving Amendment Number 4 ("Amendment 4") to the MTA.[3] Pursuant to Amendment 4, FCA assumed liability for:

> All Product Liability Claims arising from the sale on or prior to the Closing of motor vehicles or component parts, in each case manufactured by Sellers or their Subsidiaries and distributed and sold as a Chrysler, Jeep, or Dodge brand vehicle . . . solely to the extent such Product Liability Claims (A) arise directly from motor vehicle accidents occurring on or after Closing, (B) are not barred by any statute of limitations, . . . and (D) do not include any claim for **exemplary or punitive damages**.

Castleman's accident occurred in May 2016, almost five years after the Closing, in a Vehicle designed and manufactured pre-Closing. Castleman alleges that when the Vehicle rolled, due in part to the inherent instability of the design, the flaws in the roof structure caused the roof to collapse, crushing the "occupant survival space." Allegedly these defects, as well as airbag design flaws, caused Castleman's injuries. Castleman seeks to hold FCA liable for Old Chrysler's negligent conduct in designing and manufacturing the Vehicle that caused her injury under the MTA. Castleman also seeks punitive damages for FCA's post-Closing conduct. FCA has moved to dismiss Castleman's Amended Complaint in its entirety.

## ANALYSIS

### I. LEGAL STANDARD

FCA moves under Fed. R. Civ. P. 12(b)(6) to dismiss Castleman's Amended Complaint for failure to state a claim. "To survive a motion to dismiss, a complaint must contain sufficient

---

[3] *In re Old Chrysler LLC, et al.*, No. 09-50002 (Bankr. S.D.N.Y. Nov. 19, 2009), Docket No. 5988.

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "At the motion-to-dismiss stage, [the court] must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Albers v. Bd. of Cty. Comm'rs of Jefferson Cty.*, 771 F.3d 697, 700 (10th Cir. 2014) (quoting *Cressman v. Thompson*, 719 F.3d 1139, 1152 (10th Cir. 2013)). "[A] court should disregard all conclusory statements of law [in the complaint] and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011).

"In evaluating a Rule 12(b)(6) motion to dismiss, courts may consider not only the complaint itself," but also "documents incorporated into the complaint by reference . . . 'if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.'" *Smith v. United States,* 561 F.3d 1090, 1098 (10th Cir. 2009) (quoting *Alvarado v. KOB–TV, L.L.C.,* 493 F.3d 1210, 1215 (10th Cir. 2007)). The court will consider the Sale Order, the MTA, and Amendment 4. These documents are referenced in the Amended Complaint, are central to plaintiff's claim, and are undisputed.

Castleman's Amended Complaint alleges four causes of action: 1) strict product liability ("Count I"), 2) negligent product liability ("Count II"); 3) breach of warranties ("Count III"); and 4) punitive damages for FCA's knowing, reckless, and/or intentional misconduct after the Bankruptcy Sale Closing Date ("Count IV"). FCA moves to dismiss the Amended Complaint, arguing that the claims are barred by the Sale Order and the MTA.

## II. SUBSTANTIVE ANALYSIS

### A. COUNTS I-III

In two brief paragraphs, FCA asks the court to dismiss Castleman's entire Amended Complaint because it contains a single claim for punitive damages. *See* Mot. Dismiss at 16. FCA argues this is required by the language of the MTA. In Amendment 4, FCA assumed liability for:

> All Product Liability Claims arising from the sale on or prior to the Closing of motor vehicles or component parts, in each case manufactured by Sellers or their Subsidiaries and distributed and sold as a Chrysler, Jeep, or Dodge brand vehicle . . . solely to the extent such Product Liability Claims (A) arise directly from motor vehicle accidents occurring on or after Closing, (B) are not barred by any statute of limitations, . . . and (D) do not include any claim for **exemplary or punitive damages**.

(emphasis added). Under FCA's logic, the phrase "Product Liability Claims," as used in Amendment 4, would not refer to a single claim, but rather to any complaint that includes product liability claims. But FCA offers no authority to support this conclusion, and the court finds the argument unpersuasive. Complaints can allege many different claims for relief that are not necessarily interrelated and may be pled in the alternative. For example, a complaint could include claims for product liability alongside claims for breach of contract, without the action being considered only a breach of contract case. The language of Amendment 4 clearly relates to individual claims, not to a lawsuit or complaint as a whole. The court must therefore examine each count individually to decide if it is a Product Liability claim for which FCA assumed liability.

Counts I–III of the Amended Complaint are product liability claims arising from an accident that occurred on May 1, 2016 (after the 2009 Closing Date) in a 2004 Jeep Grand Cherokee Laredo, designed, manufactured, advertised, sold, warranted and delivered by Old Chrysler prior to the Closing Date. Each of the three individual product liability claims (one for strict liability, one for negligent product liability, and one for breach of warranty) can stand alone

and none of the three claims include a claim for "exemplary or punitive damages." As FCA has not offered any other reason why Castleman's first three counts have failed to state a claim, the court denies FCA's motion to dismiss Counts I-III.

## B. COUNT IV: PUNITIVE DAMAGES

In Count IV, Castleman seeks "an award of exemplary and punitive damages against FCA" to compensate her for injury allegedly caused by FCA's "intentional misrepresentations" regarding the Vehicle's safety features and its knowing, reckless, and indifferent failure to "give notice, warn, recall, retrofit, or fix the defects" in the Vehicle after the Sale. *See* Am. Compl. at ¶¶ 78; 74. The parties agree that punitive damages are available in Utah.[4] But to state a claim for punitive damages under Utah law, a plaintiff must first make a claim that would entitle her to "compensatory or general damages" and then must allege "that the acts or omissions of the tortfeasor are the result of willful and malicious or intentionally fraudulent conduct, or conduct that manifests a knowing and reckless indifference toward, and a disregard of, the rights of others." *See* Utah Code Ann. § 78B-8-201 (also stating that to be entitled to punitive damages, plaintiff must establish the second prong "by clear and convincing evidence"). In deciding the motion to dismiss, the court must decide whether Castleman has pled sufficient facts to state a claim for relief for punitive damages that is plausible on its face.

FCA argues that two provisions within the Sale Order preclude liability for Castleman's punitive damages claim. First, FCA argues that the claims underlying the punitive damages actually arise from FCA's potential successor liability and that those claims are excluded by the Sale Order. Second, FCA argues that Castleman's claim for punitive damages based on FCA's post-Closing conduct is barred by Amendment 4 because the proximate cause of her injuries was

---

[4] Although the parties do not address this issue, the parties appear to stipulate that Utah law applies to Castleman's claims for relief.

actually Old Chrysler's pre-Closing conduct, not FCA's post-Closing conduct. The court addresses each argument in turn.

   1. **Underlying Claims**

Castleman's punitive damages claim alleges that she was harmed by FCA's post-Sale intentional misconduct, including intentional misrepresentations and failure to give notice, warn, recall, retrofit, or fix the defects in the Vehicle. FCA argues that the Sale Order precludes liability for any type of successor or derivative liability claims and because the duty to warn is a species of successor liability claims under Utah law, Castleman has failed to state a plausible claim for relief.

   a. *Intentional Misrepresentation*

FCA does not address whether the Sale Order precludes FCA's liability for post-Sale intentional misrepresentation, nor does FCA argue that Castleman failed to state a claim for intentional misrepresentation. The court addresses this issue only so far as to hold that Castleman can base a claim for punitive damages on an underlying claim for intentional misrepresentation by FCA because intentional misrepresentations by FCA regarding the safety of Jeep Grand Cherokees designed by Old Chrysler would constitute post-Sale Conduct not covered by the Sale Order. *See In Matter of Motors Liquidation Co.*, 829 F.3d 135, 156–7 (2d Cir. 2016) (holding that a Sale Order cannot reach "independent claims relating only to [a successor entity's] conduct" such as "claims involv[ing] misrepresentations by [purchasing entity] as to the safety of [predecessor entity's] cars.").

   b. *Duty to Warn*[5]

FCA admits that Utah law imposes a post-Sale duty to warn, but argues that the duty to warn is based entirely on successor liability and thus excluded by the language of the Sale Order

---

[5] The court addresses Castleman's claims that FCA breached its duty to warn, recall, retrofit, and fix under the umbrella tort of duty to warn. The parties have not argued that the claims are

7

precluding "any theory of successor or transferee liability." *See* Mot. Dismiss at 14–15. The court disagrees. The Sale Order is not so broad as to preclude FCA's liability for post-Sale duty to warn. The court first examines whether a duty to warn arises under Utah law. It then examines whether the Sale Order eviscerates or modifies any such duty.

First, the court finds that liability arising from the breach of a purchasing entity's duty to warn is distinct from traditional successor liability. Successor liability is addressed in section 12 of the Restatement (Third) of Torts: Products Liability (1988),[6] while, a purchasing entity's duty to warn is addressed in section 13. Although both sections refer to "successor liability," they are distinct types of liability as adopted by Utah law. "Utah imposes on a successor corporation an independent post-sale duty to warn of a predecessor corporation's product defects under the conditions outlined in section 13 of the Restatement (Third) of Torts." *Tabor v. Metal Ware Corp.*, 168 P.3d 814, 816 (Utah 2007) (addressing the question of duty to warn under Utah law on certification from the Tenth Circuit). This duty can be imposed "whether or not [an entity is] liable under the rule stated in [the Restatement (Third) of Torts] § 12." *See* Restatement (Third) of Torts: Prod. Liab. § 13 (1998). The Tenth Circuit recognized this distinction in *Herrod v. Metal Powder Products*, 413 F. App'x 7, 13 (10th Cir. 2010), holding that "[a] corporation free from successor liability may nevertheless owe a duty to warn of dangers posed by its predecessor's products as a result of its ongoing relationship with the predecessor's customers." To summarize, liability for failure to warn is not dependent on whether a purchasing entity assumed liabilities incurred by its

---

inherently different, and the court finds that the analysis of whether the Sale Order precludes the claims is identical.

[6] "Utah adheres to the traditional rule of successor nonliability . . . , as set forth in section 12 of the Restatement (Third) of Torts." *Tabor v. Metal Ware Corp.,* 168 P.3d 814, 816 (Utah 2007).

predecessor, but rather on the fact that a purchasing entity owes a duty to continuing customers that is independent of those past liabilities.

The next question is whether the Sale Order can preclude liability for a purchasing entity's independent duty to warn. The court finds that it cannot, because doing so would be outside the scope of the bankruptcy court's authority. The Court of Appeals for the Second Circuit addressed this issue as it related to FCA's liability under the Sale Order in *In Matter of Motors Liquidation Co.*, 829 F.3d 135, 156 (2d Cir. 2016). It reasoned:

> A bankruptcy court may approve a [bankruptcy] sale "free and clear" of successor liability claims if those claims flow from the debtor's ownership of the sold assets. Such a claim must arise from a (1) right to payment (2) that arose before the filing of the petition or resulted from pre-petition conduct fairly giving rise to the claim. Further, there must be some contact or relationship between the debtor and the claimant such that the claimant is identifiable.

*Id.* The court then addressed the reach of the bankruptcy court's authority as applied to different types of claims. Although "the bankruptcy court assumed that the Sale Order's broad [free and clear] language" covered "(1) pre-closing accident claims, (2) economic loss claims arising from the [product] defect . . . , (3) independent claims relating only to [the successor entity's] conduct, and (4) Used Car Purchasers' claims," the Sale Order could only cover "the first two sets of claims." *Id.* Accordingly, claims based on FCA's post-Sale duty to warn relate to the successor entity's conduct and are not excludable by the Sale Order.

A similar issue was addressed by the United States Bankruptcy Court for the Southern District of New York in *In re Old Carco LLC*, 582 B.R. 838, 845 (Bankr. S.D.N.Y. 2018). There, the court noted that while the bankruptcy court presiding over the bankruptcy proceedings can (and did) exclude FCA's liability for Old Chrysler's failure to "recall or retrofit," the question of whether FCA "had a duty to recall or retrofit previously sold Old [Chrysler] vehicles that [FCA]

9

did not manufacture is a question of nonbankruptcy law." *Id.* (quoting *In re Motors Liquidation Co.*, 541 B.R. 104, 141 (Bankr. S.D.N.Y. 2015)). And "non-bankruptcy law may impose on an asset buyer a duty to warn owners of products manufactured by its seller that the products are defective or pose a danger." *Id*. This court agrees. Because bankruptcy law does not reach FCA's post-Sale conduct the court looks to Utah law, which does impose a post-sale duty to warn on purchasing entities as laid out in section 13 of the Restatement.[7]

For these reasons, the court finds that Castleman's claim for breach of duty to warn is not excluded by the Sale Order. In reaching this decision, the court does not in any way "*modify* the Sale Order," but "merely interpret[s] the Sale Order in accordance with bankruptcy law." *In Matter of Motors Liquidation Co.*, 829 F.3d at 157.[8] Furthermore, the court finds that Castleman has

---

[7] *See* Restatement (Third) of Torts: Prod. Liab. § 13 (1998):
(a) A successor corporation or other business entity that acquires assets of a predecessor corporation or other business entity, whether or not liable under the rule stated in § 12, is subject to liability for harm to persons or property caused by the successor's failure to warn of a risk created by a product sold or distributed by the predecessor if: (1) the successor undertakes or agrees to provide services for maintenance or repair of the product or enters into a similar relationship with purchasers of the predecessor's products giving rise to actual or potential economic advantage to the successor, and (2) a reasonable person in the position of the successor would provide a warning.
b) A reasonable person in the position of the successor would provide a warning if: (1) the successor knows or reasonably should know that the product poses a substantial risk of harm to persons or property; and (2) those to whom a warning might be provided can be identified and can reasonably be assumed to be unaware of the risk of harm; and (3) a warning can be effectively communicated to and acted on by those to whom a warning might be provided; and (4) the risk of harm is sufficiently great to justify the burden of providing a warning.

[8] Other courts have questioned the reach of the Sale Order at issue in this case. *See In re Grumman Olson Indus., Inc.*, 445 B.R. 243, 256 (Bankr. S.D.N.Y. 2011), *aff'd*, 467 B.R. 694 (S.D.N.Y. 2012) ("[A]lthough the *Chrysler* sale order purported to extinguish the buyer's liability for potential future tort claims, the Second Circuit questioned its reach.") (citing *In re Chrysler LLC*, 576 F.3d 108, 127 (2d Cir.), *cert. granted, judgment vacated sub nom. Indiana State Police Pension Tr. v. Chrysler LLC*, 558 U.S. 1087 (2009), and *vacated sub nom. In re Chrysler, LLC*, 592 F.3d 370 (2d

successfully stated a claim for breach of the duty to warn. Castleman made sufficient factual allegations that FCA has enjoyed potential or actual economic advantage from providing maintenance and repair services on Old Chrysler's vehicles. Castleman has also alleged that a reasonable person in FCA's position would have provided a warning because "(1) FCA knew 2004 Jeep Grand Cherokees posed a substantial risk of harm to users due to defects; (2) reasonable users were unaware of the risk of harm and defects; (3) a warning could have been effectively communicated to and acted on by users . . . ; and (4) the risk of serious head/neck injury or death justified the burden of providing a warning." *See* Opp'n Mot. Dismiss at 14; Am. Compl. at ¶¶ 60–69, 74, 77–84. In short, Castleman has successfully alleged that FCA owed her a duty to warn and that it breached that duty.

2. **Proximate Cause**

The next issue the court must address is whether Amendment 4 precludes Castleman's punitive damages claim because Old Chrysler's pre-Closing conduct rather than FCA's post-Closing conduct, was the proximate cause of Castleman's injuries. Castleman's Amended Complaint alleges that FCA's post-Sale conduct was the proximate cause of her harm. But FCA argues that even if FCA breached a post-Sale duty that was a cause of Castleman's harm, it was not the proximate cause. Specifically, it argues that the conduct of Old Chrysler in negligently designing, testing, labeling, manufacturing, inspecting and selling the Grand Cherokee prior to the closing date was the proximate cause of her harm and therefore Castleman's claims for punitive damages are excluded by the MTA.

---

Cir. 2010) ("[W]e decline to delineate the scope of the bankruptcy court's authority to extinguish future claims, until such time as we are presented with an actual claim for an injury that is caused by Old Chrysler, that occurs after the Sale, and that is cognizable under state successor liability law.")).

11

To decide this question, the court would have to determine whether the post-Closing or pre-Closing conduct was the proximate cause of Castleman's harm. But the question of proximate cause is a question reserved for the fact finder. Accordingly, it is not appropriately decided at the motion to dismiss stage. *See Steffensen v. Smith's Mgmt. Corp.*, 820 P.2d 482, 486–87 (Utah Ct. App. 1991), *aff'd*, 862 P.2d 1342 (Utah 1993) (holding that when the evidence is in dispute, proximate cause is reserved for the jury). As the Bankruptcy Court decided when addressing the same issue in *In re Old Carco LLC*, 582 B.R. 838, 846 (Bankr. S.D.N.Y. 2018), if "Plaintiff can assert legally sufficient claims based solely on [FCA]'s post-Closing wrongful conduct, the question of what proximately caused the Decedents' fatal injuries is for the factfinder." Because Castleman has alleged a legally sufficient basis on which a trier of fact could determine that FCA's post-closing conduct was a proximate cause[9] of Castleman's injuries, the court denies FCA's motion to dismiss.

## ORDER

Defendant FCA's Motion to Dismiss Plaintiff's First Amended Complaint is **DENIED.**

Signed March 28, 2019

                                        BY THE COURT

                                        _____
                                        Jill N. Parrish
                                        United States District Court Judge

---

[9] The post-Closing conduct does not have to be the only proximate cause of Castleman's harm because, under Utah law, "there can be more than one proximate cause of an injury so long as each is a concurrent contributing factor in causing the injury." *Steffensen*, 820 P.2d at 486.